NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Amir Orly, | : | Case No. 15-11650 (JLG) |
| | : | Chapter 7 |
| Debtor. | : | |

------------------------------------------------------------x
| | | |
|---|---|---|
| Alfredo Moreno Cocoletzi, Edgar Monteroso, | : | |
| Gilberto Dairo Ramirez Ramos, German Torres | : | |
| Romero, and Christian Fredy Villar Medina, | : | |
| *on behalf of themselves and others similarly* | : | |
| *situated*, | : | |
| | : | |
| Plaintiffs, | : | Adv. P. No. 16-01020 (JLG) |
| | : | |
| v. | : | |
| | : | |
| Amir Orly, | : | |
| | : | |
| Defendant | : | |

------------------------------------------------------------x

# MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS

# A P P E A R A N C E S :

MICHAEL FAILLACE & ASSOCIATES, P.C.
*Attorneys for Plaintiffs Alfredo Moreno Cocoletzi,*
*Edgar Monteroso, Gilberto Dario Ramirez Ramos,*
*German Torres Romero, and Cristian Fredy*
*Villar Medina*
60 East 42nd Street, Suite 2540
New York, New York 10165
By:    Joshua S. Androphy, Esq.

GARVEY, TIRELLI & CUSHNER, LTD.
*Attorneys for Defendant Amir Orly*
50 Main Street, Suite 390
White Plains, New York 10606
By:    Linda M. Tirelli, Esq.

**JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Amir Orly (the "Debtor") owns, operates or controls two pizzerias in New York City. Prepetition, Alfredo Moreno Cocoletzi ("Moreno"), Edgar Monteroso ("Monteroso"), Gilberto Dario Ramirez Ramos ("Ramirez", and collectively with Moreno and Monteroso, the "Original Plaintiffs"), German Torres Romero ("Torres"), and Cristian Fredy Villar Medina ("Medina," and collectively with Torres and the Original Plaintiffs, the "Plaintiffs"), each formerly employed by the Debtor at the pizzerias, sued the Debtor and others in the United States District Court for the Southern District of New York (the "District Court Action") for damages occasioned by their alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), New York Labor Law, §§ 190 *et seq.* and 650 *et seq.* ("NYLL"), and the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs., Tit. 12, § 142-2.4(a) (2009).[1] That action is pending and is still at the discovery stage.

The Plaintiffs commenced this adversary proceeding by filing a complaint (the "Complaint") seeking a judgment pursuant to § 727(a)(4) of the Bankruptcy Code (the "§ 727 Claim") denying the Debtor his discharge in bankruptcy or, alternatively, a judgment pursuant to § 523(a)(6) of the Bankruptcy Code (the "§ 523 Claim") determining that any damages awarded to them in the District Court Action are non-dischargeable debts in this bankruptcy case.[2] The matter before the Court is the Debtor's motion pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable herein by Bankruptcy Rule 7012, to dismiss the Complaint for failing

---

[1] *See Complaint Collective Action under 29 U.S.C. § 216(b)* [DC ECF Doc. No. 1]. References to "DC ECF Doc. No. __" refer to the docket entries in the action pending against the Debtor in the United States District Court for the Southern District of New York, Case No. 1:15−cv−02696−CM−DCF, "ECF Doc No. __" refer to docket entries in the Debtor's main case, 15-11650 (JLG), and "AP ECF Doc. No. __" refer to docket entries in this adversary proceeding, 16-01020 (JLG).

[2] *See Complaint Objecting to Dischargeability of Debt and Discharge of Debtor* [AP ECF Doc. No. 1].

2

to state a claim upon which relief can be granted (the "Motion").[3] The Plaintiffs oppose the Motion.[4]

The Plaintiffs' § 727 Claim was predicated on the Debtor's alleged failure to disclose in his Statement of Financial Affairs that he owned more than 5% of the voting securities of the entities that owned the pizzerias. In their objection to the Motion, the Plaintiffs concede that the claim should be dismissed because the Debtor has amended his Statement of Financial Affairs to include the information not reflected on the Statement of Financial Affairs, as filed. Obj. at 1. At the argument on the Motion, the Plaintiffs' counsel advised the Court that they will promptly take the steps necessary to withdraw that count of the Complaint. Accordingly, the Court will address the Motion only as it relates to the § 523 Claim.

For the reasons stated below, the Motion is **GRANTED** as to Messrs. Torres and Medina with leave to seek to replead, with any such motion seeking such relief to be filed no later than thirty (30) days after entry of this Order, and is **DENIED** as to Messrs. Moreno, Monteroso, and Ramirez.

### Jurisdiction

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a) and 157(b)(1) and the Amended Standing Order of Reference M-431 (Preska, C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I) and (J).

### Legal Standard and Scope of the Record

Rule 12(b)(6) provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted [.]" FED. R. CIV. P. 12(b)(6). The purpose of a motion to

---

[3] *See Defendant Amir Orly's Memorandum of Law in Support of Motion to Dismiss Complaint* [AP ECF Doc No. 8], as supported by *Defendant's Reply to Plaintiff's Opposition* [AP ECF Doc. No. 13] (the "Reply").

[4] *See Plaintiffs' Memorandum of Law in Opposition to Defendant Amir Orly's Motion to Dismiss Complaint* [AP ECF Doc. No. 12] (the "Objection").

3

dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980); *see also Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (describing purpose of Rule 12(b)(6) motion "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."). Thus, when considering a motion to dismiss, the court must liberally construe the complaint, accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). That is because to defeat a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim will be dismissed if the plaintiff does not nudge its claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it [requires the plaintiff to plead] more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "a complaint is deemed to include any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v.*

4

*Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (same). For incorporation by reference, a complaint "must make a clear, definite and substantial reference to the document." *Helprin v. Harcourt*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). The Plaintiffs attached a copy of the District Court Complaint to their complaint and specifically incorporated by reference the allegations in that complaint. *See* Compl. ¶ 4. Thus, the Court will consider the facts alleged in both complaints in assessing the merits of the Motion.

## **Background**[5]

On June 24, 2015, the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code. By a Notice of Voluntary Conversion filed on October 23, 2015, the Debtor converted his chapter 13 case to one under chapter 7. [ECF Doc. No. 17]. The Debtor owns, operates, or controls two pizzerias located in New York, New York (collectively, the "Pizzerias") (*see* District Court Compl. ¶¶ 2, 21, 25)[6] operating under the name "Fat Sal's Pizza." The Plaintiffs worked for the Debtor at various respective times between 2008 and March 2015. *Id.* ¶¶ 37, 57, 76.

On April 7, 2015, the Original Plaintiffs, individually, and on behalf of others similarly situated, commenced the District Court Action. Torres and Medina were later joined as plaintiffs in that action.[7] As discussed below, in support of the action, the Plaintiffs allege that the Debtor

---

[5] With certain irrelevant exceptions, Bankruptcy Rule 7052 makes Fed. R. Civ. P. 52 applicable in adversary proceedings. Pursuant to Rule 52(a)(3), in resolving this Motion, the Court is not required to state findings of fact or conclusions of law. Accordingly, the facts recited herein are those alleged and incorporated in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] The District Court Complaint utilizes the defined term "Defendants" when pleading many of the allegations therein, with the definition of that word including the Debtor. The Court will refer to the Debtor throughout this decision when presenting the factual allegations pled in the District Court Complaint that include "Defendants."

[7] *See Consent to Become Party Plaintiff under the F.L.S.A.* for Christian Villar, and *Consent to Become Party Plaintiff under the F.L.S.A.* for German Torres [DC ECF Doc. Nos. 6 and 9, respectively].

knowingly, intentionally and willfully injured them by (i) failing to pay them minimum and overtime wages as mandated by §§ 206 and 207 of the FLSA (Counts One and Two); (ii) failing to pay minimum, overtime and "spread of hour "wages as mandated by §§ 652 and 653 of the NYLL (Counts Three, Four and Five); (iii) violating notice and recording and wage statement requirements under NYLL (Counts Six and Seven); and (iv) requiring the Plaintiffs to pay, without reimbursement, the costs and expenses of purchasing and maintaining equipment and "tools of the trade" in violation of § 206 of the FLSA and §§ 193 and 198 of the NYLL (Count Eight).

By Order dated January 13, 2016, this Court granted the Plaintiffs' unopposed motion pursuant to section § 362(d) of the Bankruptcy Code to modify the automatic stay to permit the Plaintiffs to prosecute the District Court Action to judgment, but with the stay remaining in effect as to the enforcement of any judgment obtained.[8] The Plaintiffs timely commenced this action on February 6, 2016, and on April 11, 2016, the Debtor filed the Motion. As noted, in resolving the Motion, the Court will consider only whether the Plaintiffs have adequately pled their claim for relief under § 523(a)(6).

## Discussion

Section 523(a)(6) bars the discharge of any debt that is the product of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).[9] The three elements that a creditor must establish to prevail on a claim under that section are "first, that the debtor acted willfully, second, that the debtor acted maliciously, and

---

[8] *See Order Pursuant to 11 U.S.C. § 362(d) Modifying the Automatic Stay Imposed by 11 U.S.C. § 362(a)* [ECF Doc. No. 25].

[9] The Bankruptcy Code defines "entity" as including a "person" (11 U.S.C. § 101(15)), and further defines "person" as including an "individual." 11 U.S.C. § 101(41).

third, that the debtor's willful and malicious actions caused injury to the creditor or its property." *In re Salim*, 2015 WL 1240000, at *22 (Bankr. E.D.N.Y. Mar. 16, 2015). The terms "willful" and "malicious" are separate elements with distinct meanings and both must be satisfied by a preponderance of the evidence. *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 548 (Bankr. E.D.N.Y. 2009); *Rupert v. Krautheimer (In re Krautheimer)*, 241 B.R. 330, 340-41 (Bankr. S.D.N.Y. 1999). *See also Barclays American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (The terms 'willful' and 'malicious' "should not be lumped together to create an amorphous standard to prevent discharge from any conduct that may be judicially considered to be deplorable."). To promote the "fresh start" policy of the Bankruptcy Code, courts narrowly construe the exceptions to dischargeability enumerated in §523(a)(6). *In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996); *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 219 (Bankr. D. Conn. 2011).

Before assessing the merits of the Motion, the Court considers the Debtor's assertion that even assuming *arguendo* the truth of the Complaint's allegations, the Plaintiffs cannot state a claim for relief under § 523(a)(6), because the term "willful," as used in that section, has a different meaning than that used in the FLSA and NYLL. *See* Motion at 5.[10] Although the Debtor is correct that the use and purpose of the term "willful" is different under each of the

---

[10] In relevant part, the Motion provides as follow:

> [T]he Plaintiffs' Complaint incorporates the allegations made in the Plaintiffs' District Court Action and the causes of action asserted by the Plaintiffs' under the FLSA and NYLL. (See Pg. 2, ¶4 of the Complaint). The Plaintiffs' allegations in the Complaint rely upon the definition of "willful" under the FLSA and NYLL, not the definition of "willful" under 11 U.S.C. § 523(a)(6). Therefore, the Plaintiffs' Complaint fails to plead facts which tend to show that Defendant's nonpayment was a willful and malicious action intended to cause injury to the Plaintiffs; thus, the count of willful and malicious action intended to cause injury should be dismissed.

Mot. 5.

7

respective statutes,[11] the argument fails and, in making it, the Debtor has misplaced his reliance on *United States v. Makozy (In re Makozy)*, Bankr. No. 13-25231, Adv. No. 13-2440, 2013 WL 9663062 (Bankr. W.D. Pa. Sept. 9, 2014). *See* Reply 4, Mot. 5. In *Makozy*, the government obtained a judgment prepetition against the debtor with the district court finding, in part, that he "willfully" violated the FLSA. *Makozy*, 2013 WL 9663062, at *2. After the debtor filed bankruptcy, the government sued under §523(a)(6) to except the judgment from his discharge and moved for summary judgment on the complaint. *Id.* at *1-2. The debtor opposed the motion and, in doing so, cross moved for summary judgment dismissing the case, arguing that the factual determinations made by the district court did not support a finding of nondischargeability under § 523(a)(6). *Id.* at *3. The bankruptcy court denied both motions, finding that because the elements of willfulness under the FLSA and § 523(a)(6) differ, the district court's determination that the debtor's violation of the FLSA was "willful," in and of itself, was not dispositive of whether the same actions support a finding of willfulness under § 523(a)(6). *Id.* Rather, the court found that it must analyze the district court's findings to determine whether the debtor's actions rose to the level of willful conduct under § 523(a)(6). *Id. See also Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208-09 (9th Cir. 2001) (affirming judgment by applying § 523(a)(6)

---

[11] Under § 523(a)(6), the term "willful" refers to "injury," meaning that a nondischargeable debt is one that stems from an intentional injury. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). In contrast, under the FLSA, "willful" does not refer to injury at all. It refers to the actions of the employer and specifically, whether the employer either knew that its conduct was prohibited by the act, or showed a reckless disregard for the matter. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Under the NYLL, prior to November 29, 2009, a plaintiff was required to establish a "willful" violation of the NYLL to be awarded liquidated damages for violations of that law. *See Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015). For those purposes, the term "willful" did not "appreciably differ from the FLSA's willfulness standard." *Kueble v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (internal quotations omitted) (citations omitted). Thereafter, the NYLL was amended to remove the "willful" requirement and replace it with a presumption of entitlement to liquidated damages unless the defendant established that the violation was done in good faith, a standard that closely matches the FLSA test for liquidated damages. *Inclan*, 95 F.Supp.3d, at 505. The Court mentions the foregoing because Moreno complains of non-payment for a period of time that falls within the NYLL's pre-amendment period where "willfulness" under the NYLL might still be implicated. *See* District Court Compl. ¶¶ 43, 48.

8

"willful" standard "to the state court's factual findings demonstrate[d] that the injury to [the creditor] was willful."); *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998) (granting summary judgment based on collateral estoppel by concluding, in part, that the facts underlying the Magistrate Judge's finding of "blatant and willful" violations of court orders were sufficient to establish "malicious" injury under section 523(a)(6)).

The Court rejects the Debtor's contention and will not limit its analysis of the merits of the Motion to the differences in the meaning of "willful" under the FLSA and NYLL and §523(a)(6). Instead, it adopts the approach taken by *Makozy* and other courts and, as set forth below, will test the allegations in support of the Complaint to determine whether they state a "plausible" claim for relief under §523(a)(6). *Twombly*, 550 U.S. at 570.

**I.      Whether the Complaint Pleads That the Debtor Acted "Willfully"**

Under §523(a)(6), "[t]he word 'willful' . . . modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* the leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998) (emphasis in original). *See also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (same) (quoting *Geiger*). Thus, debts arising from injuries caused by negligent or reckless conduct are outside the scope of §523(a)(6). *Geiger*, 523 U.S. at 62. *See also In re Jercich*, 238 F.3d at 1208 (stating that the *Geiger* court "clarified that it is insufficient under §523(a)(6) to show that the debtor *acted* willfully and that the injury was negligently or recklessly inflicted; instead, it must be shown not only that the debtor *acted* willfully, but also that the debtor inflicted *injury* willfully and maliciously rather than recklessly or negligently.") (emphasis in original); *Wright v. Bujnowski (In re Wright)*, 209 B.R. 276, 280 (E.D.N.Y. 1997) ("[I]n applying the [willfulness] standard,

9

courts properly should look to tort law to distinguish the 'willful and malicious' from the merely 'reckless' act.") To establish that a debtor caused "willful injury" under §523(a)(6), the plaintiff must prove either that the debtor deliberately intended to cause the injury or that based on the debtor's conduct, there was a subjective substantial certainty that the injury would occur. *Margulies v. Hough (In re Margulies)*, 517 B.R. 441, 452 (S.D.N.Y. 2014). *See also In re Thoms*, 505 Fed. Appx. 603, 605 (8th Cir. 2013) (summary order) (holding that "[i]f the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences" (quoting *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008))).

The Plaintiffs allege that the Debtor violated the FLSA and NYLL by (i) failing to pay minimum, overtime and "spread of hours" wages (Compl. ¶¶ 3, 11, 12, 13; District Court Compl. ¶¶ 5, 6, 7, 9, 97, 98, 125, 129, 134, 138, 143); (ii) violating notice and recording and other reporting requirements (Compl. ¶ 3; District Court Compl. ¶¶ 108, 113 – 115, 147, 150); and (iii) requiring the Plaintiffs to pay for their tools of the trade and other expenses without reimbursing them (Compl. ¶ 3; District Court Compl. ¶¶ 56, 75, 94, 153). They contend that the Debtor's unlawful conduct, albeit in furtherance of economic gain through "minimizing labor costs" (District Court Compl. ¶ 111), was intentional, willful, wrongful and in bad faith (Compl. ¶¶ 14, 15; District Court Compl. ¶¶ 110 - 112); and that the Debtor committed those unlawful acts to injure the Plaintiffs by, among other things, failing to pay them wages and benefits rightfully due and owing to them, and in doing so, inflicted significant injuries on them. Compl. ¶ 14, 15; District Court Compl. ¶¶ 110, 112. Thus, contrary to the Debtor's assertion (*see* Mot. 4-5), the Complaint pleads specific facts demonstrating that the Debtor acted with the requisite intent to injure the Plaintiffs. The Plaintiffs have met their burden under §523(a)(6) of pleading

"willfulness" since they have alleged that the Debtor deliberately acted with the specific intent to cause them to suffer economic injury. *See, e.g., Citik Ka Wah Bank Ltd. New York Branch v. Wong (In re Wong)*, 291 B.R. 266, 281-82 (Bankr. S.D.N.Y. 2003) (holding that "[a]n act is willful when the debtor intends to inflict the injury or knew that the injury was substantially certain to result" in denying motion to dismiss); *Pagones v. Mason (In re Mason)*, Nos. 95 B 41537 JLG 95/1653A, 1999 WL 58579, at *4 (Bankr. S.D.N.Y. Jan. 28, 1999) (granting summary judgment and finding willfulness of injury, in part, based on creditor having established in state court that debtor "acted with . . . , significantly, a subjective intent to injure [creditor's] reputation.").

Nor is there merit to the Debtor's assertion that the Complaint fails to allege that he acted "willfully" because the Plaintiffs have not alleged specific facts that he "actually had the means to pay Plaintiffs and that he simply refused to do so." *See* Reply 6; *see also id.* at 4 (stating that neither of the complaints "contains any facts or allegations that Defendant had the ability to pay Plaintiff and willfully chose not to."). The plain language of the Complaint proves otherwise. The Plaintiffs allege that the Debtor "had the clear ability to pay the Plaintiffs the proper wages in accordance with federal law, but simply chose not to." Compl. ¶ 14. In support of that contention, they allege that the Pizzerias had "a gross annual volume of sales not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)" for "each year from 2009 to the present." District Court Compl. ¶ 33. In that light, contrary to the Debtor's assertion, the case of *In re Marcella*, 463 B.R. 212, does not support the Motion. In that case, the plaintiff sued the debtor under § 523(a)(6) to exclude indebtedness arising out of the debtor's failure to pay her prepetition wages from his discharge in bankruptcy. After an evidentiary hearing, the court entered judgment in favor of the debtor. In part, the court held that the

plaintiff failed to prove that the debtor acted "maliciously" in failing to pay the wages, since the evidence showed that the plaintiff lacked the financial resources to pay the plaintiff's salary. *Marcella*, 463 B.R. at 222. Here, the case is at the pleading stage. As such, the Court is not asked to determine whether the $500,000 in gross annual sales yielded sufficient funds to satisfy the Plaintiffs' claims for unpaid wages and benefits. *See Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990) ("The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."). Rather, the Court is asked simply to assess the sufficiency of the pleadings and, in particular, whether the Plaintiffs have stated a claim for relief under § 523(a)(6) that is "plausible" on its face. *See Twombly*, 550 U.S. at 556. For the reasons previously discussed, the Court finds that the Plaintiffs have done so.

Based on the foregoing, the Court finds that the Plaintiffs have sufficiently pled that the Debtor acted "willfully" for purposes of section 523(a)(6).

## II.     Whether The Complaint Pleads That the Debtor Acted Maliciously

A specific intent to injure or harm is not a prerequisite to finding that a debtor acted maliciously for purposes of §523(a)(6). *Metromedia Co. v. Fugazy (In re Fugazy)*, 157 B.R. 761, 765 (Bankr. S.D.N.Y. 1993). The term malice includes both actual and constructive malice and means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996). Actual malice is present where there is "a wrongful act done consciously and knowingly in the absence of just cause or excuse." *Nesler v. Thomason (In re Thomason)*, 288 B.R. 812, 815 (Bankr. S.D. Ill. 2002). *See also In re Bremmer*, 131 F.3d 788, 791 (9th Cir. 1992) (A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily

caused injury, and (4) is done without just cause or excuse.") (quotation omitted). It includes "inherently malicious" acts like assault, or malicious prosecution where malice may be an essential element of the cause of action. *See, e.g.*, *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998). Constructive malice is implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *In re Stelluti*, 94 F.3d at 88. Accordingly, "[m]alice is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *In re Mitchell*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998) (citations omitted) (internal quotation marks omitted). Malice may be inferred from conduct that has no potential for financial benefit to the debtor such that the debtor's only conceivable motive was "to inflict harm upon the creditor." *Luppino*, 221 B.R. at 700.

Here, malice is not an element any of the counts asserted in the District Court Action and the Plaintiffs do not allege that the Debtor's breaches of the FLSA and NYLL were inherently malicious. Moreover, the Plaintiffs do not allege that the Debtor's only conceivable motive for breaching those statutes was to injure them. Instead, they allege that the Debtor, motivated by the prospect of increased profits or other economic gain, intentionally breached his duties to them under the FLSA and NYLL and harmed them in doing so. As a general rule, an intentional breach of statutory duties by a debtor, whose conduct is clearly motivated by the prospect of financial gain, is not sufficient alone to imply malice. *Luppino*, 221 B.R. at 700. The Plaintiffs must also allege that there was "some aggravating circumstances evidencing conduct [by the Debtor] so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code." *Blankfort*, 217 B.R. at 144; *Luppino*, 221 B.R. at 700 (same). As discussed below, the Plaintiffs have done so.

13

The Plaintiffs assert that the Debtor "knowingly violate[ed] the FLSA and NYLL" by implementing an unlawful "corporate policy of minimizing labor costs" through a scheme that benefited the Debtor and others financially by denying the Plaintiffs and other similarly situated employees compensation and benefits that the Debtor knew they were entitled to receive. District Court Compl. ¶ 111. They allege that as part of the scheme, the Debtor "disguise[ed] Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees," which permitted the Debtor "to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs a lower tip-credited rate" which he still failed to pay. *Id.* at ¶ 11. They maintain that to further the unlawful corporate policy, the Debtor engaged in the "practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations." *Id.* at 13. Moreover, the Debtor "willfully disguise[d] the actual number of hours Plaintiffs (and similarly situated individuals) worked" (*id.* at 110) by: (i) failing "to inform Plaintiffs that their tips would be credited toward the payment of the minimum wage; (ii) failing "to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers;" and (iii) paying the Plaintiffs in cash. *Id.* at 107, 108, 109, respectively. They allege that to conceal the scheme, and in further violation of the FLSA and NYLL, the Debtor did not provide the Plaintiffs with "wage statements" that would have given them information regarding their compensation including, their gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; . . . the number of regular hours worked; and the number of overtime hours worked." *Id.* at ¶ 114. Finally, the Plaintiffs allege that in furtherance of the unlawful corporate policy, the Debtor did not merely deny the Plaintiffs their lawful compensation, but also he required them to "pay, without reimbursement, the costs and expenses

14

for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs" which "further reduced their wages in violation of the FLSA and NYLL." *Id.* at ¶ 153. Such violations of federal and state law and regulations were done knowingly and intentionally. *Id.* at 111-12.

"The public policy of the State of New York and the federal government is that the interest in enforcing wages and hours laws on behalf of all workers is paramount." *Pineda v. Kel-Tech Const., Inc.*, 15 Mis.3d 176, 185 (Sup. Ct., NY County 2007) (citation omitted). Indeed, "[t]he prime purpose of the [FLSA] was to aid the unprotected, unorganized and lowest paid of the nation's working population, that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum substance wage." *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 320 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945)). Thus, the Plaintiffs have plead much more than "an ordinary tort or breach of . . . statutory duty." *Blankfort*, 217 B.R. at 144. Rather, they have alleged that the Debtor knowingly, intentionally and willfully advanced a corporate employment policy calculated to undermine that important public policy by running roughshod over the protections afforded employees under the FLSA and NYLL.  In this regard, *Murray v. Altendorf (In re Altendorf)*, Bankr. No. 14-30652, Adv. No. 15-07003, 2015 WL 4575219 (Bankr. D. N.D. July 29, 2015), is instructive.  There, in support of their claim for relief under §523(a)(6), the plaintiffs alleged that the debtor's scheme "was malicious because it was certain or almost certain to cause harm to [the creditors]." *Id.* at 7.  They alleged that the debtor there did so by "intentionally establish[ing] a scheme [to violate the FLSA] by which Debtor deliberately obtained labor through threats of financial harm and failed to pay Plaintiffs wages to which Debtor knew Plaintiffs' were entitled." *Id.* Notwithstanding a profit motive being present, that court held that "conduct which is certain

15

or almost certain to cause financial harm to the creditor in addition to the debtor's knowledge that he or she is violating the creditors legal rights, when taken together, is sufficient to establish a claim under section 523(a)(6)." *Id.* (alterations and quotation marks omitted) (quoting *Johnson v. Logue (In re Logue)*, 294 B.R. at 63 (B.A.P. 8th Cir. 2003). In denying a Rule 12(b))(6) motion, the court in *Altendorf* found that the plaintiffs pleaded a "plausible claim for relief under section 523(a)(6)." *Id*. So too have the Plaintiffs here. They have alleged facts that, taken as true, establish aggravating circumstances evidencing conduct by the Debtor so reprehensible as to warrant relief under §523(a)(6). *See Jercich*, 238 F.3d at 1207, 1209 (stating "[f]ew, if any, areas of the law are more important than an employer's obligation to pay his employee's wages, and finding that failure to pay wages involved "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights" (quoting Cal. Civ. Code § 3294)). The complained of conduct was also clearly certain to cause financial harm to the Plaintiffs. *Logue*, 294 B.R. at 63.

Although the Debtor did not specifically address the element of "maliciousness," he contends that the Plaintiffs' failure to plead "tortious conduct" on his part dooms the Complaint. As support, the Debtor cites to *Jercich*. Reply 3. However, the "tortious conduct" element as discussed in *Jercich* is inapplicable here. That case involved a breach of an employment contract where the court held that "to be excepted from discharge under § 523(a)(6), a breach of contract must be accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.'" *Jercich*, 238 F.3d at 1206. Here, the Plaintiffs do not contend that the Debtor breached a contract. Rather, they allege that the Debtor willfully and maliciously violated wage and hour statutes. Thus, the Debtor's contention concerning lack of "tortious conduct," as found central to the *Jercich* decision, is unavailing in this context. In fact, to the extent the

16

Debtor is arguing that specific tortious conduct must be established in addition to the willful and malicious elements, the *Jercich* court rejected that contention. *Id.* ("We reject BAP's imposition of a requirement that the conduct at issue be tortious even if a contract between the parties did not exist."). This Court likewise rejects the Debtor's argument on this point.

Therefore, based on the foregoing, the Plaintiffs have sufficiently pled the existence of malicious injury as required under the second prong of section 523(a)(6).

### III.   Whether The Complaint Pleads That Plaintiffs Suffered Injury

In considering whether a debtor's action caused injury to the plaintiff or its property under §523(a)(6), "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable." *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005). The Debtor argues that the Complaint lacks specific facts establishing that the "Plaintiffs are entitled to payment of wages" (s*ee* Reply 5) which the Court interprets as a challenge to whether the Plaintiffs have sufficiently pled "injury" regardless of the Debtor's intent. However, the Complaint contains detailed factual allegations regarding the Original Plaintiffs' entitlement to unpaid wages. *See* District Court Compl. ¶¶ 43-49, 64-67, 83-86 (describing in detail the hours worked by each of the Original Plaintiffs in excess of a 40 hour work week for wages of $4.00 - $5.00 per hour). *See also* Compl. ¶¶ 10-13 (stating that all of the Plaintiffs were employed by the Debtor as delivery workers at the Pizzerias, and none of the Original Plaintiffs were paid the statutorily required minimum wage, overtime wages, or spread of hours wages.). Thus, the existence of injury caused by the Debtor's intentional and unlawful acts has been well pled by the Original Plaintiffs. With respect to them, the Complaint "state[s] a claim to relief [under §523(a)(6)] that is plausible on its face," *Twombly*, 550 U.S. at 570, because the Complaint pleads facts that, if proved at trial, will be

sufficient to establish willful and malicious injury under §523(a)(6). *See Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012) (summarizing "willful and malicious injury" as "one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act.").

However, the Complaint fails as to Torres and Medina because there are no allegations specific to the injuries they have allegedly suffered by reason of the Debtor's intentional and unlawful acts. The Complaint is silent with regard to their work hours, denial of their specific wage and hour information, whether either of them was required to purchase tools of the trade in connection with their employment, or similar information relevant to the issue of damages. Thus, even accepting the factual allegations in the Complaint as true and drawing all inferences in their favor, Torres and Medina have failed to state a claim for relief under §523(a)(6) that is plausible on its face because they have not alleged any facts in support of their contention that they have been injured by the Debtor's unlawful and allege damages in support of their claim.

## Conclusion

Based on the foregoing, the Motion is **GRANTED** as to Messrs. Torres and Median with leave to seek to replead, with any such motion seeking such relief to be filed no later than thirty (30) days after entry of this Order, but is **DENIED** as to Messrs. Moreno, Monteroso, and Ramirez.

The Debtor is directed to settle an order.

Dated: New York, New York
      August 10, 2016                            /s/ *James L. Garrity, Jr.*
                                                              _____
                                                              Hon. James L. Garrity, Jr.
                                                              United States Bankruptcy Judge